UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN GREAVES,<br>        Plaintiff,<br><br>    v.<br><br>CECILY, et al.,<br>        Defendants. | No. 3:20-cv-1583 (SRU) |

### INITIAL REVIEW ORDER

John Greaves, currently confined at Corrigan-Radgowski Correctional Center ("Corrigan") in Uncasville, Connecticut and proceeding *pro se*, filed the instant complaint under 42 U.S.C. § 1983 against six defendants: Nurse Cecily, Nurse Kayla, Nurse Supervisor R. Phillips, Health Services Administrator LaBonte, Ingrid Feder, and APRN Mallory Mozykoski. Greaves principally alleges that the defendants were deliberately indifferent to his serious medical needs and seeks damages.

**I.      Standard of Review**

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b).  Although detailed allegations are not required, the complaint must include enough facts to afford the defendants fair notice of the claims and the grounds upon which they are based. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007).  In addition, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Conclusory allegations will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude afforded to *pro se* litigants).

## II.   Facts[1]

As COVID-19 was spreading, healthy and sick individuals alike were transferred throughout the Corrigan building. *See* Compl., Doc. No. 1, at 6 ¶ 2. On March 25, 2020, Greaves was moved to the H-pod unit, where there were three known COVID-19 cases. *See id.* at ¶ 1. Six days later, on March 31, 2020, Greaves mentioned to a nurse that he was not feeling well. *See id.* She checked his temperature and told him he was fine. *Id.* On April 2, 2020, Greaves's nose felt like he "had to sneeze" and his throat was itchy. *Id.* at ¶ 2. He informed a correctional officer, who told him not to worry because he was moving. *Id.*

On April 3, 2020, Greaves's symptoms worsened. *See id.* at ¶ 3. He experienced shortness of breath, body aches, cold sweats, headaches, and loss of smell. *See id.* On April 6, 2020, Greaves reported his symptoms to a correctional officer, who called a nurse. *Id.* The nurse checked his temperature and breathing, and told Greaves he was "not sick." *See id.*

That evening, Greaves submitted a request to the medical unit seeking a COVID-19 test on the ground that he was experiencing symptoms that were reported on television—namely, body pain, loss of smell, headache, and shortness of breath. *See id.* at ¶ 4, p. 34. Nurse Kayla ignored his symptoms, and Greaves feared for his life. *See id.* at ¶ 4. As the request form

---

[1] The facts are drawn from the complaint and accompanying exhibits, and I assume them to be true and draw all reasonable inferences in Greaves's favor. *See Ashcroft*, 556 U.S. at 678–79.

appended to the complaint illustrates, Nurse Kayla specifically responded that Greaves's vital signs were stable and that Greaves did not exhibit shortness of breath when he was seen by nursing staff that day.  *See id.* at 34.  She added that only individuals in the community with symptoms and at high risk were being tested.  *Id.*

The next day, on April 7, 2020, Greaves told Lieutenant Hackett that he believed he was sick and that the medical unit was not attempting to help him.  *See id.* at ¶ 5.  Hackett said that he would elevate the issue to the warden; Hackett later reported that the warden said Greaves would have to wait.  *Id.*

On April 9, 2020, Greaves refused to lock up at breakfast unless a nurse provided him with a COVID-19 test.  *See id.* at ¶ 6.  A nurse thereafter agreed to place Greaves in quarantine for a test.  *See id.*  Greaves went into quarantine and took the test on April 10 or 11, 2020, which came back positive for COVID-19.  *Id.* at ¶¶ 6, 7.

Greaves then filed a grievance, to no avail.  *See id.* at ¶ 8.  Janine Brennan called Greaves down to the medical unit to try to assist him with filing out the grievance forms correctly.  *See id.*

On July 31, 2020, as Greaves was reviewing his medical records, he learned that a nurse at Corrigan falsely claimed that he reported that he was working out the same day he refused housing in order to get the COVID-19 test.  *See id.* at ¶ 9.

### III.   Discussion

At the start, I note that Greaves does not indicate whether he sues the defendants in their individual or official capacities.  To the extent he seeks damages from the defendants in their official capacities, however, that claim cannot proceed.  The Eleventh Amendment bars an award of money damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1995).

Because section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and because Greaves alleges no facts suggesting that the state has waived immunity in this case, Greaves cannot recover damages from the defendants in their official capacities. Accordingly, Greaves may sue the defendants for damages in their individual capacities only.

Records available on the Department of Correction website show that Greaves was sentenced on March 5, 2021. *See Inmate Information*, CONN. DEP'T OF CORR., ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=356263 (last visited April 2, 2021). Because Greaves therefore appears to have been a pretrial detainee at the time of the incidents at issue, his deliberate indifference to medical needs claim is governed by the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause because, [p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner— neither cruelly and unusually nor otherwise.") (citations and quotation marks omitted).

A pretrial detainee must establish two prongs to prove a deliberate indifference claim under the Due Process Clause. *See Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018). First, the pretrial detainee must satisfy the "objective" prong—that is, "that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Id*. (citation omitted). Second, the pretrial detainee must satisfy the "*mens rea*" prong—that is, that "the officer acted with at least deliberate indifference to the challenged conditions." *Id.* (citation omitted).

For Fourteenth Amendment claims, the Second Circuit applies the same standard as the Eighth Amendment in deciding whether an action is objectively serious enough to trigger

constitutional liability. *See id*. In order to meet the "objective" prong of a claim for deliberate indifference to medical needs under the Eighth Amendment, the plaintiff must show that the alleged deprivation of adequate medical care was "sufficiently serious." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted). That inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Where the defendants allegedly failed to provide any treatment for a prisoner's medical condition, the focus of the court's inquiry is whether the medical condition is sufficiently serious. *See id*. The Second Circuit has delineated several factors that are "highly relevant" to that question, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702–03 (2d Cir. 1998) (citation omitted). In addition, a sufficiently serious medical condition exists when, if left untreated or neglected for a long period of time, it could "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) (citation omitted).

Where, on the other hand, the defendants allegedly provided medical treatment that was inadequate, the objective inquiry is narrower. *See Salahuddin*, 467 F.3d at 280. For instance, if the prisoner is receiving ongoing medical care and there was an "unreasonable delay or interruption in that treatment," the seriousness inquiry focuses on "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id*. (citation omitted).

Regarding the "*mens rea*" prong, the defendant's state of mind is evaluated objectively. *See Valdiviezo*, 752 F. App'x at 33. "[T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Negligence is insufficient to satisfy that component. *See id.* at 36.

In his complaint, Greaves appears to assert that the defendants failed to promptly or adequately treat him for COVID-19 once he started exhibiting symptoms. Although Greaves does not set forth facts suggesting that he is particularly vulnerable to severe complications from the virus, I will assume, for purposes of my initial review only, that Greaves has adequately pled a sufficiently serious deprivation of medical care.

Regardless, I conclude that the allegations are insufficient to plausibly raise an inference that Nurse Kayla had the requisite *mens rea*. Greaves alleges, and his exhibits show, that he submitted a medical request on April 6, 2020 noting that he was experiencing COVID-19 symptoms and requesting a COVID-19 test. Nurse Kayla responded, "you were seen by nursing 4/6/2020, vital signs stable and no shortness of breath. In the community only people with symptoms and high risk are being tested." Compl., Doc. No. 1, at 34.

In light of the fact that Greaves had been evaluated by medical staff, who observed that his vital signs were stable, the same day he submitted his request, Greaves has not demonstrated that Nurse Kayla knew, or should have known, that Greaves faced excessive risk to his health and safety and that Nurse Kayla recklessly failed to mitigate that risk. Even when construing the complaint liberally and drawing all reasonable inferences in Greaves's favor, the complaint

suggests that Nurse Kayla's refusal to provide a COVID-19 test or otherwise treat Greaves constituted negligence at worst, which is not sufficient to state a due process claim. *Nails v. Laplante*, 596 F. Supp. 2d 475, 480 (D. Conn. 2009) (explaining that plaintiffs do "not have a constitutional right to the treatment of their choice," and "[m]ere disagreement with prison officials about what constitutes appropriate care" is not sufficient to state a constitutional claim). For those reasons, I conclude that the complaint fails to adequately allege that Nurse Kayla recklessly neglected to act with reasonable care to mitigate the risk to which Greaves was exposed. The claim is therefore **dismissed.**

With respect to the other defendants, the allegations, too, fall short. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (explaining that a plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution") (quoting *Iqbal*, 556 U.S. at 676). Neither the complaint nor the appended documents reference Nurse Cecily, Health Services Administrator LaBonte, or APRN Mozykoski, and Greaves's conclusory assertion that he was ignored by medical staff at Corrigan does not suffice. Absent specific allegations or documentation, he cannot state a plausible claim against those defendants. The claims against Cecily, LaBonte, and Mozykoski are therefore **dismissed** under 28 U.S.C. § 1915A(b)(1).

With respect to Dr. Feder and Nurse Phillips, the complaint likewise does not mention those defendants and the reference to them in the medical documents, multiple copies of which are attached, is insufficient. According to the medical records, Nurse Phillips reviewed the

treatment plan with Greaves on April 9, 2020—when Greaves appears to have been placed in quarantine—and advised him to return to the clinic with any questions or concerns.  *See* Compl., Doc. No. 1, at 39, 48, 58, 61.  On April 12, 2020, Nurse Phillips noted that Greaves was symptom free for 72 hours and that Dr. Freston had approved his return to his housing unit.  *Id.* at 41, 63, 66, 67.  On April 13, 2020, Dr. Feder signed off on the positive test results.  *Id.* at 37–38, 49–50, 56–57, 59–60.

Even when drawing all reasonable inferences in Greaves's favor and viewing the complaint liberally, the foregoing does not suggest that Dr. Feder or Nurse Phillips failed to act with reasonable care in mitigating the risk posed by Greaves's COVID-19 diagnosis, whether intentionally or recklessly.  Greaves therefore fails to state colorable claims against Feder or Phillips, and the claims against them are **dismissed** under 28 U.S.C. § 1915A(b)(1).

### IV.   Conclusion

All claims against Nurse Kayla, Feder, Phillips, Cecily, LaBonte, and Mozykoski are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b).  I will afford Greaves an opportunity to amend his complaint to cure the deficiencies I raised in the initial review order.  Greaves shall file the amended complaint within 30 days of the date of this order or the dismissal will be with prejudice.

In light of this initial review order, Greaves's motion seeking a status update on the case (doc. no. 8) is **denied as moot.**

So ordered.

Dated at Bridgeport, Connecticut, this 5th day of April 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

8